UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                            No. 1:18-cr-01046-JCH-1

VALERI A. DAVENPORT,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant's Opposed Motion to Dismiss for Lack of Jurisdiction [ECF. No. 26] brought under Federal Rule of Criminal Procedure 12(b)(2). For 70 years the State of New Mexico prosecuted crimes occurring on the Maxwell Housing area of Kirtland Airforce Base in Albuquerque. On March 13, 2018, however, the New Mexico Legislature allegedly ceded state jurisdiction over Base property to the United States, giving the federal government the right to prosecute crimes on that property. Five days later, on March 18, 2018, Defendant was arrested for driving while intoxicated on the Base. Under the United States Constitution, if a state cedes jurisdiction over federal property in the state, the United States has exclusive jurisdiction to prosecute offenses committed on that federal property. But because federal jurisdiction over state held land implicates federal-state relations, jurisdiction must be ceded following the state's cession statutes, and the federal government must give notice that it is accepting jurisdiction. If these steps are not followed – and Defendant contends that they were not – the federal government does not obtain jurisdiction over such lands. In the critical five-day

period between the alleged cession and her arrest, Defendant argues the United States had not taken jurisdiction and thus her crimes are not prosecutable in federal court. After careful consideration of the motion, briefs, evidence, and relevant, the Court finds that the motion should be granted.

I.  **FACTUAL BACKGROUND**

On January 3, 2018 the Department of the Air Force sent New Mexico Governor Susana Martinez a Letter of Request to acquire legislative jurisdiction over three parcels of land – (1) Maxwell Housing, (2) Pershing Housing/Commissary/Gibson Gate, and (3) New Mexico National Guard – on the Base that were under state criminal jurisdiction. *See* Letter from Susana Martinez, Gov. of New Mexico, to Members of the Legislature 1 (Feb. 5, 2018) (Martinez Letter), ECF No. 30-1; Affidavit of Lauren A. Shure ¶ 4, ECF No. 28-1 (Shure Aff.). The last jurisdictional cessation of Base land to the federal government occurred 54 years ago. *See* Def.'s Mot. at 15. Governor Martinez transmitted a February 5, 2018 letter to New Mexico legislators, explaining that she supported the federal government's "intent[ion] to clarify jurisdictional issues dating back to the early 1940s" and that she recommended that the legislature cede jurisdiction of the requested parcels to the federal government. *See* Martinez Letter at 2.

On February 14, 2018, state legislators adopted the governor's recommendation, ceding to the United States "exclusive legislative jurisdiction" over the three parcels identified in the Air Force's Letter of Request. *See* N.M. H.R.J. Res. 13, 53rd Leg., 2d Sess. (Joint Resolution). The Joint Resolution gave the federal government broad power "to legislate with respect to such land and persons present or residing on it, subject only to the United States and state constitutional restraints." *Id*. The Joint Resolution said that it was "in reference to the notice received by the legislature from the governor" – *i.e.* Governor Martinez's February 5, 2018 letter to legislators in

which she recommended ceding jurisdiction to the federal government. Pursuant to New Mexico's cession statute, which prescribes the manner in which jurisdiction is transferred, *see* N.M.S.A. § 19-2-2, the governor's office recorded the Joint Resolution in the Bernalillo County Clerk's Office on March 13, 2018.

Five days later, in the early morning hours of March 18, 2018, Defendant got off work from Circle K, met some friends for drinks, and then drove home to the Maxwell Housing area, which is the name of the military-civilian family housing neighborhood on the Base. *See* Def.'s Mot. at 2; Crim. Compl. 1, ECF. No. 2. As she approached Maxwell Gate – the manned control point that regulates traffic into and out of the Maxwell Housing area – Defendant rode her brakes, drove extremely slowly, nearly hit three bollards, and had bloodshot eyes and slurred speech. *See* Crim. Compl. ¶ 5. Airmen manning the gate breathalyzed Defendant twice, returning blood alcohol content results of .15 and .12, levels unlawful under New Mexico's driving while intoxicated statutes. *See id*. ¶ 6.

## II. PROCEDURAL BACKGROUND

Relying on the federal Assimilative Crimes Act, 18 U.S.C. § 13 (ACA)[1], which borrows, or "assimilates," state criminal law to "federal enclaves," federal prosecutors by Information charged Defendant on March 20, 2018 with two misdemeanor counts under New Mexico's driving while intoxicated statutes, N.M.S.A. 1978 § 66-8-102(A) (Count 1) and § 66-9-102(C)(1). *See* Information, ECF No. 9. The United States superseded the Information on April

---

[1] "The purpose of the [ACA] is to conform the law of federal enclaves to that of the surrounding state by applying state criminal statutes to non-federal criminal acts … committed within areas over which the federal government has exclusive jurisdiction." Pattern Crim. Jury Instr. 10th Cir. 2.97 (2011) (citing *United States v. Mayberry*, 774 F.2d 1018, 1020 (10th Cir. 1985); *Johnson v. Yellow Cab Transit Co*., 137 F.2d 274, 276 (10th Cir. 1943)).

4, 2018, maintaining the same two counts but adding an increased state law penalty provision. *See* Superseded Information, ECF No. 14. The Superseded Information alleged that Defendant drove while intoxicated "within … the territorial jurisdiction of the United States." *Id.*

On May 16, 2018 Defendant moved to dismiss the Information under Fed. R. Crim. P. 12(b)(2), asserting that the Court lacked subject matter jurisdiction. Defendant submitted to the Court documents showing four instances of state cession of jurisdiction of Base land to the federal government occurring between 1952 and 1964. *See* Def.'s Exs. D, E; Mot. at 13-15. Defendant's analysis of the Public Land Survey System[2] tended to show that none of these four jurisdictional transfers included the Maxwell Gate where Defendant was arrested. *See* Def.'s Mot. at 16-21. Defendant therefore argued that for the case to be prosecutable in federal court the United States had to "come forward with evidence of [] a fully executed transfer from the State of New Mexico to the federal government, subsequent to the four cessions [], that encompasses Maxwell Gate," and that the federal government had to show that it filed a "notice of acceptance" under 40 U.S.C. § 3112, which is the federal statute prescribing how the federal government accepts state offered jurisdiction. *See* Def.'s Mot. at 16.

The United States responded by submitting to the Court official government maps, an affidavit from an Air Force Judge Advocate, and the New Mexico Legislature's Joint Resolution to prove that the federal government acquired "exclusive/federal legislative jurisdiction on" March 13, 2018 and that the state had no criminal jurisdiction over the Base after that date. Shure Aff. ¶ 5; *see* Govt.'s Exs. 1-3. As for the federal government's acceptance of the jurisdiction, the

---

[2] The Public Land Survey System is a rectangular survey system used to subdivide and describe public land in the western United States. *See United States v. Estate of St. Clair*, 819 F.3d 1254, 1256 (10th Cir. 2016) (describing PLSS).

United States argued that the Joint Resolution's language that it was passed "in reference to the notice received by the legislature from the governor," was evidence of the federal government's acceptance of the jurisdiction. Govt.'s Resp. 4, ECF. No. 28.

In her reply brief, Defendant argued that the United States was confusing things – the "notice" mentioned in the Joint Resolution was referring to Governor Martinez's February 5 letter to the legislature in which she recommended granting jurisdiction; it was not a § 3112 notice of acceptance the Air Force had to file to receive the offered jurisdiction. In supplemental briefing, Defendant submitted evidence showing that the United States never filed a § 3112 notice of acceptance for Base property with the state governor's office. *See* Def.'s Notice of Supplemental Authority, ECF No. 32; Exs. B, C, ECF Nos. 32-2, 32-3. The United States filed no supplemental briefing countering this evidence. Section 3112 acceptance aside, Defendant additionally argued that the state and federal governments did not comply with New Mexico's cession statute in the first place. Specifically, Defendant contended that New Mexico's cession procedures required the governor to record the Department of the Air Force's January 3, 2018 letter, and that the governor's office never did so.

In sum, Defendant's principal challenges are that the state did not properly cede criminal jurisdiction because of the defective recording, and that the United States did not accept the jurisdiction because it did not file a § 3112 notice of acceptance.

### III. LEGAL STANDARD FOR JURISDICTIONAL CHALLENGE

"The party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the court's jurisdiction." *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994). "When there is no factual dispute as to whether the facility or site is a federal enclave, the court may take judicial notice of that fact or give a mandatory [jury] instruction that the facility

or site is a federal enclave." Pattern Crim. Jury Inst. 10th Cir. 2.97 (2011) (citing *United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980)). However, as here, "if the nature of the location is in issue, the appropriate method for resolving that issue is normally by a pretrial motion to dismiss for lack of jurisdiction." Pattern Crim. Jury Inst. 10th Cir. 2.97. "As a general matter, the trial court decides the jurisdictional status of a particular property or area and then leaves to the jury the factual determination of whether the alleged crime occurred at the site." *United States v. Roberts*, 185 F.3d 1125, 1139 (10th Cir. 1999) (citing *United States v. Hernandez–Fundora,* 58 F.3d 802, 812 (2d Cir.1995) (district court may determine whether a federal prison falls within the territorial jurisdiction of the United States)). "[T]he burden is on the party claiming that the court has subject matter jurisdiction" to persuade the court by a preponderance of the evidence that it has jurisdiction. *Bustillos*, 31 F.3d at 933.

## IV. DISCUSSION

### a. Constitutional and Statutory Framework

Pursuant to U.S. Const. art. 1, § 8, cl. 1, 17, "Congress may acquire derivative legislative power from a State ... followed by the State's subsequent cession of legislative authority over the land." *Kleppe v. New Mexico,* 426 U.S. 529, 542 (1976). "The federal government can only acquire jurisdiction over [state] property, however, if both state and federal governments agree to the transfer." *United States v. Johnson*, 994 F.2d 980, 984 (2d Cir. 1993) (citing *Paul v. United States,* 371 U.S. 245, 264 (1963)). State and federal governments can "agree" to a transfer through the cession process, which sets forth specific state and federal rules on offering and accepting jurisdiction. "In New Mexico, the current procedures for … ceding exclusive or partial jurisdiction to the federal government over a federal enclave within New Mexico are codified at NMSA 1978, Section 19–2–2 (1963)." *State v. Herrera*, 2014-NMCA-003, ¶ 26, 315 P.3d 311,

318. That provision sets forth three essential requirements for state legislative jurisdiction to transfer to the federal government:

> First, "in order to acquire … or in order to relinquish such legislative jurisdiction, … the United States, … shall file a notice of intention to acquire or relinquish such legislative jurisdiction, … with the governor."
>
> Second, "[t]he governor shall transmit the notice together with his comments and recommendations, … to the next session of the legislature. Unless prior to the expiration of the legislative session to which the notice is transmitted the legislature has adopted a resolution approving the transfer of legislative jurisdiction as proposed in the notice, the transfer shall not be effective."
>
> Third, "[t]he governor shall cause a duly authenticated copy of the notice and resolution to be recorded in the office of the county clerk of the county where the land or other area affected by the transfer of jurisdiction is situated, and upon such recordation the transfer of jurisdiction shall take effect."

N.M. Stat. Ann. § 19-2-2(A) – (C).

Stated more simply, to acquire state lands, the federal government must (1) file a "notice of intention" with the state governor; (2) the state legislature must approve the transfer by adopting a resolution; and (3) the governor must record (a) the notice of intention and (b) the legislative resolution in the county clerk's office where the land at issue is situated. *See id*.

On the federal side, Congress enacted 40 U.S.C. § 3112, which sets forth how the United States can accept grants of jurisdiction by the states. Specifically, if the United States acquires an interest in state property, it does not automatically acquire jurisdiction over it. It must accept the jurisdiction in one of two ways – either by filing a § 3112 notice of acceptance with the state governor stating the extent of jurisdiction it is accepting "or in another manner prescribed by the laws of the State where the land is situated." § 3112(b). "It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over the land" in one of those two ways. § 3112(c). Thus, in the United States Supreme Court's most authoritative case interpreting § 3112, *Adams v. United States,* 319 U.S. 312 (1943), the Court held that a federal

7

court had no criminal jurisdiction over a rape committed at a military camp because the federal government had not expressly accepted jurisdiction as required under the predecessor to § 3112, 40 U.S.C. § 255. The reason federal officials must expressly accept jurisdiction is so that states' automatic ceding statutes do not "saddle the United States with unwanted jurisdiction." *Johnson*, 994 F.2d at 985.

### i. Whether New Mexico's Cession Statute Was Complied With

"[T]he burden is on the party claiming that the court has subject matter jurisdiction" – in this case the United States – to persuade the court by a preponderance of the evidence that the court has jurisdiction. *Bustillos*, 31 F.3d at 933. The United States asserts the March 13, 2018 recordation of the legislature's Joint Resolution in the Bernalillo County Clerk's Office fully executed the jurisdictional transfer. New Mexico's cession statute is detailed, lengthy, and specific. It states in relevant part that "the transfer of jurisdiction shall take effect" upon the state governor's recordation of "a duly authenticated copy of *the notice and resolution* … in the office of the county clerk of the county where the land or other area affected by the transfer of jurisdiction is situated …." N.M. Stat. Ann. § 19-2-2(C) (emphases added). The statute refers recording a "notice" and a "resolution." The "notice" refers to the "notice of intention" by the federal government to acquire state held land – in this case the Department of the Air Force's January 3, 2018 letter to Governor Martinez notifying her of its intent to acquire legislative jurisdiction over Base property. The "resolution" mentioned in the statute refers to the legislative Joint Resolution.

In interpreting § 19-2-2(C) the Court is bound to follow New Mexico's rules of statutory construction, including the "plain meaning rule," which holds that "when a statute is clear and unambiguous, [courts] interpret it as written," since "a statute's plain language is the most

8

reliable indicator of legislative intent." *Stennis v. Santa Fe*, 2010-NMCA-108, ¶ 10, 149 N.M. 92, 95, 244 P.3d 787, 790. New Mexico's cession statute prescribing how "the transfer of jurisdiction shall take effect" is specific, clear, and unambiguous. Accordingly, its "mandatory language cannot be lightly dismissed because many legislative goals require strict compliance." *Stennis*, 2010-NMCA-108 at ¶ 9 (citation and quotations omitted). Here, the record shows that the governor's office recorded the Joint Resolution in the Bernalillo County Clerk's Office, and thus complied with that requirement of the cession statute. However, as Defendant correctly notes, "while the joint resolution regarding the cession has been recorded … it does not appear that the Air Force's notice of intention ever was, and the state cession statute explicitly predicates cession on the recordation of both documents." Def.'s Notice of Supplemental Authority 1. Defendant repeatedly highlighted this deficiency in her reply brief and supplemental briefing. Yet the United States failed to respond to it. Thus, there is neither evidence nor any contention from the United States that the federal government's notice of intention was recorded. Nor did the United States explain whether § 19-2-2(C) permits any exceptions or whether the doctrine of "substantial compliance" applies to that provision. *See Stennis*, 2010-NMCA-108 at ¶ 9 (doctrine of substantial compliance recognizes that sometimes "a party's actions satisfy the will of the Legislature despite that party's clear failure to comply with a statute's mandatory language.")

The United States bears the burden of quieting any doubts about the Court's subject matter jurisdiction, and it has not done so here. It has not shown that New Mexico's cession statute was complied with such that the federal government acquired criminal jurisdiction over Maxwell Gate at the time of Defendant's arrest.

### ii. Whether the Federal Government Accepted the Jurisdiction

Defendant contends that the federal government did not accept the offered jurisdiction because it did not file a § 3112 notice of acceptance. And indeed, the United States submitted no evidence that it filed any such notice. However, much like the defendant in the Court of Appeals for the Second Circuit's case in *Johnson*, Defendant "ignores that § [3112] sets out *two* distinct ways for the federal government to accept jurisdiction." *Johnson*, 994 F.2d at 985 (emphasis in original). Namely, the federal government can accept ceded jurisdiction by formal § 3112 acceptance "or in another manner prescribed by the laws of the State where the land is situated." § 3112(b). This second method of acceptance "authorizes the United States to accept jurisdiction by complying with state law requirements governing succession. The act of compliance with those requirements is tantamount to formal acceptance." *Johnson*, 994 F.2d at 985. Thus, in *Johnson*, the Court of Appeals, interpreting New York's cession statutes, held that the federal government satisfied the acceptance requirement when a federal official formally requested cession and enclosed the necessary documents as required by New York's cession statute. *Id*. at 985-86.

Here, the federal government did not file a § 3112 notice of acceptance. But it had the alternative option of accepting jurisdiction by complying with New Mexico's cession statute. It appears from the record that the United States complied with that statute in every way it could. However, as described above, the Air Force's notice of intention was not recorded. Had that notice been recorded under § 19-2-2(C), then the federal government could have accepted the jurisdictional transfer by complying with New Mexico cession statute without the need to file a § 3112 notice. However, because the United States has not carried its burden of proof by a preponderance of the evidence to show that the recording requirements of § 19-2-2(C) were complied with, the Court grants Defendant's Motion.

**IT IS THEREFORE ORDERED that** Defendant's Opposed Motion to Dismiss for Lack of Jurisdiction **[ECF. No. 26]** is **GRANTED**.

**IT IS SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE